IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRIS MARTINEZ,

      Plaintiff,

v.                                               No. 15 CV 545 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff Chris Martinez's *Motion to Reverse and Remand for a Rehearing With Supportive Memorandum* (the "Motion"), (Doc. 17), filed February 25, 2016; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 22), filed June 13, 2016; and Plaintiff's *Reply in Support of Motion to Reverse and Remand for a Rehearing With Supportive Memorandum* (the "Reply"), (Doc. 26), filed July 7, 2016.

Mr. Martinez filed an application for supplemental social security income and disability insurance benefits on February 11, 2011, alleging disability beginning November 30, 2010. (Administrative Record ("AR") 138–43, 144–53). Both applications were denied initially on July 21, 2011, (AR 77–80), and again upon reconsideration on June 8, 2012. (AR 90–93). Mr. Martinez filed a request for a hearing on July 10, 2012, (AR 94–96); a hearing occurred on October 31, 2013 before Administrative Law Judge

("ALJ") Ann Farris. (AR 20–44). Mr. Martinez and Judith Beard, an impartial vocational expert ("VE") testified at the hearing. (*Id.*). Mr. Martinez was represented at the hearing by attorney Michelle Baca. (*Id.*). The ALJ issued a decision on February 10, 2014, finding that Mr. Martinez was not disabled under the Social Security Act from November 30, 2010 through the date of the decision. (AR 10–19). Mr. Martinez then filed an application for review by the Appeals Council on March 7, 2015, (AR 6), which was summarily denied on April 24, 2015, (AR 1–5), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Martinez now argues that the ALJ committed reversible legal error by failing to: (1) analyze the limiting effects of Mr. Martinez's obesity in combination with his other impairments; and (2) develop the record with regard to Mr. Martinez's learning disability. (Doc. 17 at 1).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ did not commit reversible legal error as alleged by Mr. Martinez, the Court orders that the Motion be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

I.   **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct

legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Martinez alleges disability beginning November 30, 2010, due to his heart valve replacement, pacemaker, learning disability, high cholesterol, diabetes, and a bacterial infection. (AR 77).

At step one, the ALJ found that Mr. Martinez had not engaged in substantial gainful activity since the alleged disability onset date of November 30, 2010. (AR 12). At

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

step two, the ALJ concluded that Mr. Martinez was severely impaired by status post aortic valve replacement, complicated by bacterial endocarditis; a pacemaker placement; asthma; and obstructive sleep apnea. (*Id.*). At step three, the ALJ determined that none of Mr. Martinez's impairments, solely or in combination, met or medically equaled the severity of one of the listed impairments in §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. (AR 13). In making this determination, the ALJ stated that she also considered Mr. Martinez's morbid obesity pursuant to agency guidelines. (*Id.*).

The ALJ proceeded to step four and found that Mr. Martinez's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (AR 14–16). The ALJ based her adverse credibility finding, and her ultimate disability determination, on Mr. Martinez's testimony, hospital records, physician treatment notes and opinions, and his response to treatment. (*Id.*).

The ALJ found that Mr. Martinez has the RFC to perform sedentary work, with some limitations. (AR 14). The ALJ determined that Mr. Martinez: (1) must avoid exposure to extremely cold temperatures; (2) must avoid exposure to workplace hazards such as unprotected heights and dangerous machinery; and (3) should not perform work which requires driving a motor vehicle. (*Id.*) Finally, the ALJ determined, based on testimony from the VE, that Mr. Martinez is unable to perform any of his past relevant work. (AR 17).

At step five, the ALJ inquired whether Mr. Martinez would be able to perform any other work existing in significant numbers in the national economy. (AR 17–18). The ALJ noted that Mr. Martinez was 38 years old on the alleged disability onset date and

was therefore classified as a "younger individual" in accordance with the Regulations. (AR 17). The ALJ also determined that Mr. Martinez has at least a high school education and is able to communicate in English. (*Id.*)

The VE testified at the hearing that an individual with Mr. Martinez's same age, education, work experience, and RFC could perform the jobs of order clerk, document preparer, and jewelry preparer. (AR 18, 41). Based on this analysis, the ALJ concluded that because Mr. Martinez is capable of performing work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 18).

**IV.   Analysis**

Mr. Martinez argues that the ALJ committed reversible error by failing to: (1) analyze the limiting effects of Mr. Martinez's obesity in combination with his other impairments; and (2) develop the record with regard to Mr. Martinez's learning disability. (Doc. 17 at 1). The Commissioner responds that the ALJ properly considered Mr. Martinez's obesity when determining his RFC and that the ALJ had no duty to order a psychological or cognitive evaluation of Mr. Martinez. (Doc. 22 at 1).

   A. *The ALJ's Consideration of Mr. Martinez's Obesity*

First, Mr. Martinez challenges the ALJ's consideration of his obesity at both steps three and four. Mr. Martinez contends that the ALJ failed to properly consider his obesity at steps three and four in accordance with *Titles II & XVI: Evaluation of Obesity*, Social Security Ruling ("SSR") 02–1p, 2002 WL 34686281 (Sept. 12, 2002). Mr. Martinez emphasizes that SSR 02-1p requires that the ALJ explain how she reaches her conclusions as to whether a claimant's obesity caused or exacerbated any physical

6

or mental limitations, and that the ALJ's cursory statements that she considered Mr. Martinez's obesity are legally insufficient.

In response, the Commissioner maintains that the ALJ expressly discussed Mr. Martinez's obesity and its impact on his other impairments and the ultimate RFC finding. The Commissioner further argues that Mr. Martinez fails to suggest or identify additional limitations that should have been included in the RFC determination.

An ALJ must consider the effects of a claimant's obesity when she assesses both the severity of the claimant's impairments and the RFC because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02–1p, 2002 WL 34686281, at *1. In this case, Mr. Martinez argues that the ALJ failed to analyze the limiting effects of Mr. Martinez's morbid obesity in combination with his other medical impairments at steps three and four.

*1. The ALJ's Consideration of Mr. Martinez's Obesity at Step Three*

At step three, the ALJ determines whether the claimant's impairment or combination of impairments either meet or equal one of the "listings" of presumptively disabling impairments. 20 C.F.R. § 416.920(a)(4)(iii). In this case, the ALJ found that Mr. Martinez's impairments did not meet the severity of the listings for chronic heart failure, ischemic heart disease, asthma, or sleep-related breathing disorders. (AR 13). Regarding Mr. Martinez's obesity, the ALJ stated that she considered his obesity pursuant to SSR 02-1p, specifically with regard to the listings, and in the context of the overall record evidence in making her decision. (*Id.*). The ALJ then concluded that none of Mr. Martinez's impairments meet or equal a listing level impairment. (*Id.*).

While there is no listing for obesity, an individual with obesity will meet the requirement of a listing if she has another "impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-1p, 2002 WL 34686281 at *5. Obesity may increase the severity of coexisting or related impairments, especially in the case of musculoskeletal, respiratory, and cardiovascular impairments, and mental disorders. *Id*. Each disability claim should be evaluated on a case-by-case basis on the information in the case record. *Id*. at *6.

The ALJ's conclusory statements regarding Mr. Martinez's obesity do not demonstrate that the ALJ considered the effect of Mr. Martinez's obesity on his other impairments. Therefore, the ALJ's finding that Mr. Martinez did not satisfy any of the listings at step three is not supported by substantial evidence. Even though a claimant bears the burden of proof at step three, the ALJ must explain why a claimant does not meet a listing. *Clifton v. Chater,* 79 F.3d 1007, 1009–1010 (10th Cir.1996) (noting that under 42 U.S.C. § 405(b)(1), an ALJ is required to discuss the relevant evidence relied upon, and the legal standards she applied, at step three). Here, the ALJ failed to provide the appropriate analysis of the effect of Mr. Martinez's obesity on any of his other impairments. Thus, the ALJ erred in her consideration of Mr. Martinez's obesity. *See id.*

### 2. The ALJ's Consideration of Mr. Martinez's Obesity at Step Four

While the ALJ erred in her consideration of Mr. Martinez's obesity at step three, an ALJ's findings at other steps of the SEP "may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Indeed, a remand for a more thorough discussion of the listings is not required "when confirmed or

unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Id.* at 734. In other words, if the ALJ's findings "conclusively preclude Claimant's qualification under the listings at step three such that no reasonable factfinder could conclude otherwise, then any step three error is harmless." *Murdock v. Astrue*, No. 11-5079, 458 Fed. Appx. 702, 704 (10th Cir. Jan. 13, 2012) (unpublished) (citing *Fischer-Ross*, 431 F.3d at 735) (internal quotations omitted). As a result, the Court will now turn to the ALJ's consideration of Mr. Martinez's obesity at step four in formulating the RFC in order to determine whether the ALJ committed reversible error.

The RFC finding is a function-by-function assessment, based on how the claimant's functional physical and mental limitations, resulting from her impairments, affect her ability to work. *See* 20 C.F.R. § 416.945(a)(1); *see also Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1, *3 (July 2, 1996). The RFC represents the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. *Id.* at *7.

When a claimant suffers from obesity, the ALJ must also determine whether the claimant is able to perform routine movement and necessary physical activity within the work environment, accounting for fatigue which "may affect the individual's physical and mental ability to sustain work activity." SSR 02-1p, 2002 WL 34686281 at *6. In doing so, the ALJ "may 'not make assumptions about the severity or functional effects of obesity combined with other impairments,' but rather, must 'evaluate each case based

on the information in the case record.'" *DeWitt v. Astrue*, No. 09-3250, 381 Fed. Appx. 782, 785 (10th Cir. June 2, 2010) (unpublished) (citing SSR 02-1p, 2002 WL 34686281 at *6). This does not mean, however, that for each piece of evidence an ALJ discusses in formulating a claimant's RFC, the ALJ is also required to note the absence of any evidence that her obesity resulted in additional functional limitations or exacerbated any other impairment. *Smith v. Colvin*, No. 15-6001, 625 Fed. Appx. 896, 899 (10th Cir. Sept. 14, 2015) (unpublished).

At step four, the ALJ found that Mr. Martinez has the RFC to perform sedentary work. The ALJ found that Mr. Martinez was also limited in that he: (1) must avoid exposure to extremely cold temperatures and direct sunlight; (2) must avoid exposure to workplace hazards such as unprotected heights and dangerous machinery; and (3) should not perform work which requires driving a motor vehicle. (AR 14). In making her finding, the ALJ acknowledged that, based on the record, Mr. Martinez is morbidly obese. (AR 16). The ALJ explained that Mr. Martinez may have additional limitations because of his obesity, and that the effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. (*Id.* (citing SSR 02-01p)). The ALJ stated that "[t]he effects of the claimant's morbid obesity have been considered when determining a residual functional capacity for the claimant." (*Id.*). The ALJ further explained that, while the state medical consultant found that Mr. Martinez is able to perform light work, she found that Mr. Martinez had additional limitations due, in part, to his morbid obesity. As a result, she limited his RFC to sedentary work. (*Id.*).

Mr. Martinez argues that the ALJ has merely stated, in conclusory fashion, that she considered Mr. Martinez's obesity, which precludes the Court from determining whether the ALJ actually considered his obesity or how his obesity influenced her RFC finding. Upon review of the ALJ's decision, the Court does not find this to be the case. As described above, the ALJ explicitly stated that she considered Mr. Martinez's morbid obesity and explained how it was accounted for in the RFC—while the State agency medical consultant concluded that Mr. Martinez is able to perform light work, the ALJ further limited Mr. Martinez to sedentary work, due in part to his obesity and the resulting symptoms described at the hearing.[2] The Court finds this analysis to be legally sufficient. Indeed, the written decision "demonstrates the ALJ's understanding of [her] duty to consider and evaluate the effects of Plaintiff's obesity," and explains how Mr. Martinez's obesity impacts the RFC. *Hartshorn v. Colvin*, No. CV-14-1430-D, 2015 WL 9185482, at *2–3 (W.D. Okla. Nov. 20, 2015) (unpublished), *report and recommendation adopted*, No. CIV-14-1430-D, 2015 WL 9094886 (W.D. Okla. Dec. 16, 2015) (unpublished); *cf. DeWitt*, 381 Fed. Appx. at 785 (remanding case to agency where there was nothing in the ALJ's decision indicating how or whether a claimant's obesity influenced the ALJ in formulating her restrictive RFC); *Vallez v. Astrue*, 1:12-cv-00618-WPL, at *16–17 (D.N.M. Feb. 1, 2013) (unpublished) (finding error where, although the ALJ stated that he had given due consideration to the claimant's obesity, he did not explain what impact her obesity had on this assessment , or whether it had any impact on the RFC at all).

---

[2] The ALJ stated that while she gave Mr. Martinez the benefit of the doubt with regard to his described symptoms, she found his symptoms as described in his testimony to be only partially credible, and therefore of limited probative value. (AR 16). Mr. Martinez does not challenge the ALJ's adverse credibility finding.

11

Because the Court finds that the ALJ properly and sufficiently considered Mr. Martinez's morbid obesity at step four in formulating the RFC, any error with regard to the ALJ's consideration of his obesity at step three is harmless. Therefore, the ALJ did not commit reversible error in her consideration of Mr. Martinez's obesity.

### B.  *The ALJ's Failure to Order a Consultative Exam*

Mr. Martinez further argues that the ALJ erred in failing to develop the record as to his learning disabilities and mental capacity. (Doc. 17 at 17–20). Mr. Martinez contends that, given the evidence in the record, including his history of special education classes and complaints regarding his reading and math skills at the hearing, the ALJ was required to order a consultative examination ("CE") with IQ testing to determine whether and to what extent these impairments limit Mr. Martinez's functioning. Failure to do so, Mr. Martinez maintains, is reversible error.

In response, the Commissioner argues that no objective evidence in the record necessitated a CE, and therefore the ALJ's failure to order a CE was not error. (Doc. 22 at 8–10). Further, the Commissioner contends that, even if the RFC included the mental limitations suggested by Mr. Martinez, the VE's testimony established that Mr. Martinez could still perform a job existing in significant numbers in the national economy. Therefore, Mr. Martinez would still be found to not be disabled.

In a social security disability case, the claimant bears the burden to prove his disability. *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)). However, since disability hearings are nonadversarial, the ALJ has a duty "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its

face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* (quoting *Hawkins*, 113 F.3d at 1167). The ALJ then has the responsibility "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Hawkins*, 113 F.3d at 1164 (quoting *Henrie v. United States Dep't of Health Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993) (citing *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1982) (Brennan, J. concurring) (describing duty as one of inquiry, requiring the decision maker "to inform himself about facts relevant to his decision and to learn the claimant's own versions of those facts.")).

As the Tenth Circuit noted in *Hawkins*, the difficult issue is to "decide what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be required to look further. [The Court] . . . acknowledge[s] that the Secretary has broad latitude in ordering consultative examinations." 113 F.3d at 1166 (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). If there is a direct conflict in the medical evidence or the medical evidence in the record is inconclusive, a CE may be required. *Hawkins*, 113 F.3d at 1166 (citing 20 C.F.R. § 404.1519(b); *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993)). Additionally, if the claimant shows that there is a "reasonable possibility" of an impairment, the ALJ has a duty to order a CE. *Id*.

However, a claimant must present "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167 (citing *Diaz*, 898 F.2d at 777 (refusing to remand for CE where claimant failed to present

"objective evidence supporting the conclusion that he suffers from depression.")). Medical evidence must consist of "signs, symptoms, and laboratory findings, not only [claimaint's] statement of symptoms." 20 C.F.R. § 404.1508. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Flaherty*, 515 F.3d at 1071 (quoting *Hawkins*, 113 F.3d at 1167). An ALJ is only required to order a CE when "the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision." *Torres v. Sec'y of U.S. Dep't of Health & Human Servs.*, 17 F.3d 1437 (10th Cir. 1994) (quoting *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)).

Here, Mr. Martinez argues that there is sufficient evidence in the record to require the ALJ to request a CE as to his mental impairments and cognitive functioning. Specifically, Mr. Martinez contends that, his sister completed his adult function reports in connection with his disability application on his behalf, (AR 210, 237, 246), he attended special education classes during his schooling, (AR 180, 185), and he testified that he has always struggled with reading and math. (AR 37–38). He maintains that this is enough to trigger the ALJ's duty to order a CE.

However, Mr. Martinez points to no objective evidence of mental or cognitive impairments. Indeed, there is no diagnosis or indication from treatment notes suggesting that Mr. Martinez suffers from mental or cognitive impairments which may require more testing to decide the question of disability. Rather, the record largely reflects that Mr. Martinez presented no indication of depression or anxiety, and presented with appropriate mood and affect. (AR 585, 597, 607). While subjective complaints and comments made by a claimant are certainly evidence which may

support a finding of disability, they are not "objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167 (citing *Diaz*, 898 F.2d at 777). As a result, because Mr. Martinez cites to nothing more than his own subjective complaints, this Court finds that the ALJ was not required to order a CE to futher investigate Mr. Martinez's purported mental and cognitive impairments.

Mr. Martinez also suggests that because his attorney at the agency level requested a CE, the ALJ was required to order a CE or address the attorney's request. Mr. Martinez provides no authority for this proposition. Moreover, regardless of whether a plaintiff requests a CE, the standard is the same. That is, there must be objective evidence in the record which "'establishes a reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.'" *Madrid v. Barnhart*, 447 F.3d 788, 791 (10th Cir. 2006) (citing *Hawkins*, 113 F.3d at 1169). As stated above, the record does not reflect that the ALJ had a duty to order a CE as to Mr. Martinez's mental capabilities and intelligence. Therefore, the Court finds that the ALJ adequately developed the record and did not err in failing to order a CE regarding Mr. Martinez's cognitive functioning.

## V.     Conclusion

For all of the foregoing reasons, the Court concludes that the ALJ did not commit the errors alleged by Mr. Martinez. In addition, the Court finds that substantial evidence supports the ALJ's determinations challenged by Mr. Martinez.

**IT IS THEREFORE ORDERED** that Mr. Martinez's *Motion to Reverse and Remand for Rehearing With Supportive Memorandum*, (Doc. 17), be **DENIED** and that this cause of action is **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE